1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

8                            SAN JOSE DIVISION

9    Jajah Inc.,                              NO. C 09-00580 JW

10              Plaintiff,            **FIRST CLAIM CONSTRUCTION ORDER**

11      v.

12   Stanacard LLC,

13              Defendant.
     _____/

14                          **I.  INTRODUCTION**

15        Jajah, Inc., is a provider of telephony services, including a "web-activated" calling service.

16   Stanacard LLC is the owner of U.S. Patent No. 7,346,156 ("'156 Patent" or "Patent-in-Suit").   The

17   '156 Patent covers methods and apparatuses for forwarding a telephone call to a recipient.

18   Stanacard sent a notice to Jajah, contending that the telephone services offered by Jajah were

19   infringing the '156 Patent.  In response to this notice, Jajah commenced this action seeking a

20   declaration that the '156 Patent is invalid and is not being infringed.  In a counterclaim, Stanacard

21   claims that Jajah is infringing the '156 Patent, and seeks compensatory damages, an injunction, and

22   attorney fees.

23        On December 11, 2009, the Court held a hearing in accordance with <u>Markman v. Westview</u>

24   <u>Instruments, Inc.,</u>[1] to construe language of the asserted claims over which there is a dispute.  This

25   Claim Construction Order sets forth the Court's construction of the disputed words and phrases.

26

27

28          _____

            [1]  517 U.S. 370 (1996).

**United States District Court**
For the Northern District of California

## II.  BACKGROUND

**A.     The '156 Patent**

The '156 Patent is entitled "Methods and Apparatuses for Placing a Telephone Call."

The Abstract of the '156 Patent describes the invention as follows:

In one embodiment, the methods and apparatuses detect an identity of a caller; receive an assigned incoming telephone number; identify a recipient associated with the assigned incoming telephone number and the identity; and connect the caller and the recipient.

**B.     Procedural History**

On February 9, 2009, Plaintiff filed its Complaint for Declaratory Judgment of Patent Non-Infringement and Invalidity.  (Docket Item No. 1.)  On March 23, 2009, Defendant filed its Answer and Counterclaim for Patent Infringement.  (hereafter, "Counterclaim," Docket Item No. 10.)  The sole counterclaim is for infringement of the '156 Patent.  On April 13, 2009, Plaintiff filed its Answer to the Counterclaim.  (Docket Item No. 12.)

## III.  STANDARDS AND PROCEDURES FOR CLAIM CONSTRUCTION

**A.     General Principles of Claim Construction**

Claim construction is a matter of law, to be decided exclusively by the Court.  Markman, 517 U.S. at 387.  When the meaning of a term used in a claim is in dispute, the Court invites the parties to submit their respective proposed definitions and a brief, outlining the basis for their proposals.  In addition, the Court conducts a hearing to allow oral argument of the respective proposed definitions. After the hearing, the Court takes the matter under submission, and issues an Order construing the meaning of the term.  The Court's construction becomes the legally operative meaning of the term that governs further proceedings in the case.  Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996).  The Court recognizes that claim construction is a fluid process, wherein the Court may consider a number of extrinsic sources of evidence so long as they do not contradict the intrinsic evidence.  However, the Court acknowledges that greater weight should always be given to the intrinsic evidence.  Phillips v. AWH Corp., 415 F.3d 1303, 1324 (Fed. Cir. 2005).

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

**B.** **Construction from the Point of View of an Ordinarily Skilled Artisan**

A patent's claims define the scope of the patent: the invention that the patentee may exclude others from practicing.  <u>Phillips</u>, 415 F.3d at 1312.  The Court generally gives the patent's claims their ordinary and customary meaning.  In construing the ordinary and customary meaning of a patent claim, the Court does so from the viewpoint of a person of ordinary skill in the art at the time of the invention, which is considered to be the effective filing date of the patent application.  Thus, the Court seeks to construe the patent claim in accordance with what a person of ordinary skill in the art would have understood the claim to have meant at the time the patent application was filed.  This inquiry forms an objective baseline from which the Court begins its claim construction.  <u>Id.</u>

The Court proceeds from that baseline under the premise that a person of ordinary skill in the art would interpret claim language not only in the context of the particular claim in which the language appears, but also in the context of the entire patent specification, of which it is a part.  <u>Phillips</u>, 415 F.3d at 1313.  Additionally, the Court considers that a person of ordinary skill in the art would consult the rest of the intrinsic record, including any surrounding claims, the drawings, and the prosecution history—if it is in evidence.  <u>Id.</u>; <u>Teleflex, Inc. v. Fisosa N. Am. Corp.</u>, 299 F.3d 1313, 1324 (Fed. Cir. 2002).  In reading the intrinsic evidence, a person of ordinary skill in the art would give consideration to whether the disputed term is a term commonly used in lay language, a technical term, or a term defined by the patentee.

**C.** **Commonly Used Terms**

In some cases, disputed claim language involves a commonly understood term that is readily apparent to the Court.  In such a case, the Court considers that a person of ordinary skill in the art would give to it its widely accepted meaning, unless a specialized definition is stated in the patent specification or was stated by the patentee during prosecution of the patent.  In articulating the widely accepted meaning of such a term, the Court may consult a general purpose dictionary.  <u>Phillips</u>, 415 F.3d at 1314.

3

**D.      Technical Terms**

If a disputed term is a technical term in the field of the invention, the Court considers that one of skill in the art would give the term its ordinary and customary meaning in that technical field, unless a specialized definition is stated in the specification or during prosecution of the patent.  In arriving at this definition, the Court may consult a technical art-specific dictionary or invite the parties to present testimony from experts in the field on the ordinary and customary definition of the technical term at the time of the invention.  Phillips, 415 F.3d at 1314.

**E.      Defined Terms**

The Court acknowledges that a patentee is free to act as his or her own lexicographer. Acting as such, the patentee may use a term differently than a person of ordinary skill in the art would understand it, without the benefit of the patentee's definition.  Vitronics Corp., 90 F.3d at 1582.  Thus, the Court examines the claims and the intrinsic evidence to determine if the patentee used a term with a specialized meaning.

The Court regards a specialized definition of a term stated in the specification as highly persuasive of the meaning of the term as it is used in a claim.  Phillips, 415 F.3d at 1316-17. However, the definition must be stated in clear words, which make it apparent to the Court that the term has been defined.  See id.; Vitronics Corp., 90 F.3d at 1582.   If the definition is not clearly stated or cannot be reasonably inferred, the Court may decline to construe the term pending further proceedings.  Statements made by the patentee in the prosecution of the patent application as to the scope of the invention may be considered when deciding the meaning of the claims.  Microsoft Corp. v. Multi-Tech Sys., Inc., 357 F.3d 1340, 1349 (2004).  Accordingly, the Court may also examine the prosecution history of the patent when considering whether to construe the claim term as having a specialized definition.

In construing claims, it is for the Court to determine the terms that require construction and those that do not.  See U.S. Surgical Corp. v. Ethicon, Inc.,103 F.3d 1554, 1568 (Fed. Cir. 1997). Moreover, the Court is not required to adopt a construction of a term, even if the parties have stipulated to it.  Pfizer, Inc. v. Teva Pharms., USA, Inc., 429 F.3d 1364, 1376 (Fed. Cir. 2005).

4

**United States District Court**
For the Northern District of California

Instead, the Court may arrive at its own constructions of claim terms, which may differ from the constructions proposed by the parties.

## IV. DISCUSSION

**A.    Claim 1 of the '156 Patent**

Claim 1 of the '156 Patent provides:

A method comprising:

> detecting an identity of a caller;
>
> receiving an assigned incoming telephone number;
>
> identifying a recipient associated with the assigned incoming telephone number and the identity; and
>
> connecting the caller and the recipient,
>
> wherein said caller has a plurality of assigned incoming telephone numbers to choose from, at least one of said plurality of assigned incoming telephone numbers being associated with said recipient,
>
> wherein each assigned incoming telephone number is associated with multiple recipient telephone numbers, a particular telephone number of a recipient being determined solely by a particular assigned incoming telephone number used by a particular identified caller and without input of further data by said caller, whereby said caller is not required to be within a particular network for making calls.

Claim 1 is a "method" claim that discloses a manipulative process that operates on various "workpieces."  Claim 1 recites a sequence of steps; for convenience, the Court will refer to the four steps as the: "detecting" step, "receiving" step, "identifying" step, and "connecting" step. Additional claim language is recited in two "wherein" clauses[2] and a "whereby" clause.  These recitals can operate as limitations on the claim.  In construing the meaning of words and phrases in the four steps, the Court will consider the effect, if any, the recitals in the "wherein" clauses or the "whereby" clause have on claim construction.

If the body of a claim recites a sequence of steps as a limitation, the patent claim should be construed to require one.  <u>Gift Express, Inc. v. Compuserve Inc.</u>, 256 F. 3d 1323 (Fed. Cir. 2001).

---

[2] For ease of reference, the Court will refer to these as the "first wherein clause" and the "second wherein clause."

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1   Moreover, a patent claim may be construed as having a limiting sequence if the method implicitly

2   requires that the steps be performed in an particular order.  Id. at 1342-43.

3        Here, the Court finds that Claim 1 recites some steps that must be performed in a particular

4   sequence.  The first step recited in Claim 1 is the "detecting" step.  The workpiece on which the

5   "detecting" step operates is "an identity of a caller."  However, there is no call from which an

6   identity can be detected until the "receiving" step.  Claim 1 does not recite any method for the

7   "detecting" step to operate until the "receiving" step has commenced.  Thus, based on the language

8   of Claim 1, the Court finds that a limitation of Claim 1 is that the "receiving" step must commence

9   before the "detecting" step can commence.

10       Accordingly, the Court begins its construction of the steps in Claim 1 with the "receiving"

11  step.

12       **1.     "receiving an assigned incoming telephone number"**

13       The "receiving" step of Claim 1 recites: "receiving an assigned incoming telephone number."

14  The parties dispute the meaning of various words and phrases used to disclose this step.

15       The word "receiving" is a word commonly meaning a process of acquiring something.  There

16  is nothing in the specification to indicate that the inventors intended to give the word "receiving" a

17  novel definition.  The "receiving" step operates on an "incoming" telephone number.  The word

18  "incoming" is also a common word that requires no further construction.

19       The workpiece on which the "receiving" step operates is an incoming "telephone number."

20  The customary and ordinary meaning of the phrase "telephone number" is a sequence of numbers or

21  a sequence of signals associated with the sequence of numbers that can be used by a device that is in

22  a telephone network to initiate or to receive a telephone call.  See e.g., OXFORD DICTIONARY OF

23  CURRENT ENGLISH 940 (4th ed. 2006).  Ordinarily, when reference is made to a "telephone number"

24  being "received" it would be understood as referring to the circumstances that are attendant to the

25  telephone number being given to a caller so that the caller can use it to make a call.  When the caller

26  actually uses the telephone number to make a call, this is ordinarily referred to as a telephone call

27  being received, not as a telephone number being received.  Thus, the Court finds that in the

28

6

United States District Court

For the Northern District of California

1  "receiving" step, the inventors, as lexicographers are using the phrase "telephone number" to mean a

2  telephone call made by dialing an assigned telephone number.

3      The receiving step recites that the telephone number [call] on which the "receiving" step

4  operates is an:  **"assigned"** incoming telephone number.  The phrase "incoming telephone number"

5  is discussed in the general description:[3]

> The methods and apparatuses for placing a telephone call are shown in the context of exemplary embodiments of applications in which a caller dials an **assigned incoming telephone number** to reach a recipient that is associated with this **assigned incoming telephone number**.
> * * *
> The plurality of devices 110 are each configured to include a speaker 208 and a microphone 209.  In one embodiment, each of the plurality of devices 110 is associated with a unique telephone number.  In another embodiment, multiple devices 110 share the same telephone number.
> * * *
> In one embodiment, the telephone number detection module 310 detects the telephone number dialed by the caller.  In one embodiment, the telephone number dialed by the caller is an **assigned incoming telephone number** that corresponds with a recipient.
> * * *
> In one embodiment, the caller identification detection module 320 determines the **originating telephone number** that the caller is utilizing when making the telephone call.  In one embodiment, the **caller's telephone number** is detected by the caller identification module 320 through a caller ID service.  In this embodiment, the caller identification module 320 automatically senses the **caller's telephone number** through the caller ID service. In another embodiment, the **caller's originating telephone number** is manually entered by the caller.
> * * *
> In one embodiment, the call connection module 360 dials the particular **recipient's telephone number** and connects the caller with the particular recipient.  In this example, the **assigned incoming telephone number** dialed by the caller is associated with the recipient within the system 300.  The **assigned incoming telephone number** is configured to reach the recipient at the **recipient's telephone number** when the particular caller dials the **assigned incoming telephone number**. . . .  In one embodiment, each of these assigned incoming numbers is represented by a unique, **conventional telephone number.**

21  ('156 Patent, Col. 2:47-51, 2:63-3:1, 3:44-48, 3:54-63, 4:24-32, 6:8-10.)

22      A person of ordinary skill would understand that the "receiving" step operates on a telephone

23  call that has been initiated by a user of the method dialing a telephone number that has been pre-

24  assigned.

25

26

27      [3]  Unless otherwise indicated, all bold typeface is added by the Court for emphasis.

28

United States District Court

For the Northern District of California

Accordingly, as used in Claim 1 of the '156 Patent, the Court construes the phrase: "receiving an assigned incoming telephone number" to mean:[4]

> **receiving a telephone call that was initiated by the dialing of a telephone number that is pre-assigned to users of the method.**

### 2.      "detecting an identity of a caller"

The Court next construes the "detecting" step.  Claim 1 recites: "detecting an identity of a caller."  Although the parties do not request construction of the words in this step, the Court finds that it needs construction because the limitations of the "detecting" step impose limitations on other steps in the method.

The word "detecting" is a commonly used word that means "discovering."  The workpiece on which the "detecting" step operates is "an identity of a caller."  Claim 1 does not recite a process for <u>creating</u> "an identity" of a caller.  A person of ordinary skill in the art would understand that the creation of "an identity" must have been done outside of the method but before the "detecting" step can operate.[5]  Thus, assuming that the caller has an "identity," the Court considers what the inventors meant by the phrase: "an identity of a caller."

The word "caller" and the phrases "identity of the caller" and "caller identification" are variously discussed in the written description as "the caller's telephone number:"

> In one embodiment, the **caller identification detection module** 320 determines **the originating telephone number that the caller is utilizing when making the telephone call**.  In one embodiment, the caller's telephone number is detected by the caller identification module 320 through a caller ID service.  In this embodiment, the caller identification module 320 automatically senses **the caller's**

---

[4]  The "receiving" step operates on a call initiated by the dialing of an assigned telephone number.  Thus, under the language of Claim 1, the "receiving" step operates even if the "assigned" "telephone number" is "incoming" from a caller that has not "associated" a "recipient," e.g., the telephone number is dialed by a non-subscriber.  For example, if the "assigned" number that has been given to a "particular caller" is "555-2424," presumably, any time that "assigned" number is dialed by anyone, even if the dialer is not the particular caller to which the telephone number has been "assigned," the "receiving" step would operate.  Implicit in the "detecting" step and the "identifying" step, however, is a control such that if the call is received from a stranger, the limitations of those steps would not be met and the "connecting" step would not be performed.

[5]  The Court reserves for later consideration any effect that absence of a "creating an identity" step has on the method.

8

United States District Court

For the Northern District of California

1    **telephone number** through the caller ID service.  In another embodiment, the caller's originating telephone number is manually entered by the caller.

2    In both embodiments, the caller identification module 320 detects **the caller's telephone number**.  **In one embodiment, the caller's telephone number identifies the identity of the caller**.  For example, the caller assigns one or more telephone numbers such that when these assigned telephone numbers are detected by the caller identification module 320, the caller's identity is identified upon placing the telephone call from one of the telephone numbers assigned by the caller.

('156 Patent, Col. 3:54-4:4.)

However, in addition to discussing "identity" as the caller's telephone number, the written description also discusses embodiments of the invention in which the "identity" of the caller means a "profile for the particular caller."  In these embodiments, the caller's identity means information about the caller that has been gathered during a registration process that must have taken place before the caller uses the method:

In one embodiment, the storage module 330 stores **a record including information associated with a particular caller**.  Each record illustrates a **profile for the particular caller**.  An exemplary embodiment of the information contained within the record associated with a caller is illustrated in FIG. 4.

In one embodiment, the interface module 340 receives a signal from one of the devices 110 indicating the assigned incoming telephone number that is dialed by the caller.  In another embodiment, the interface module 340 indicating **the telephone number that is being utilized by the caller to initiate the telephone call**.

In one embodiment, the call connection module 360 **connects the caller with a recipient**.  In one embodiment, the call connection module 360 selects a particular recipient based on **the profile information associated with the caller**.  For example, **the caller programs the system 300 to connect with a particular recipient when the caller dials one of the assigned incoming telephone numbers**.

('156 Patent, Col. 4:5-24.)

Elsewhere in the written description, "identity" of a caller is discussed in terms of "the caller's name" or "log-in identification."  Here too, the "identity" information must be based on pre-registration:

In one embodiment, **the identity of the caller** field 410 uniquely identifies the caller. In one example, **the caller is identified by the caller's name**.  In another example, **the caller is identified by a log-in identification**.

In one embodiment, the number of the caller field 420 **identifies a telephone number specified by the caller that allows the caller to originate calls utilizing the system** 300.  In one embodiment, the caller specifies multiple numbers. By specifying multiple numbers, the caller is recognized by the system 300 when

9

originating a call from any of these specified numbers.  In one embodiment, when a call is originated from any of the numbers specified within the number of the caller field 420, the system 300 recognizes the particular caller's identity associated with the record 400.

('156 Patent, Col. 5:18-31.)

Thus, the inventors do not limit "identity" to so-called "caller I.D."  "Identity" includes data that is transmitted with the call or that can be determined based on that data.

Accordingly, as used in Claim 1 of the '156 Patent, the Court construes the phrase, "detecting an identity of a caller" to mean:

> **identifying the originator of a telephone call from data that is being received with the telephone call or from any other information that can be derived from that data.  Identity of a caller is not limited to the telephone number of the device from which the call is being placed.**

**3.    "wherein said caller has a plurality of assigned incoming telephone numbers to choose from"**

The Court next construes the first "wherein" clause because it relates to the "detecting" step.  The first "wherein" clause recites: "wherein said caller has a plurality of assigned incoming telephone numbers to choose from."  The parties dispute the meaning of the words and phrases used in this clause.

The plain language of the first "wherein" clause recites that before a telephone call is made, and thus before the "receiving" step can operate, through a process that must take place before the method begins to operate, a "plurality" of "assigned telephone numbers" are assigned to the "caller."  The customary meaning of the word "plurality" is being plural, that is, more than one.  See OXFORD DICTIONARY OF CURRENT ENGLISH 691 (4th ed. 2006).

In the written description, the inventors discuss embodiments in which the "caller" has multiple assigned telephone numbers:

> For example, the caller programs the system 300 to connect with a particular recipient when the **caller dials one of the assigned incoming telephone numbers.**
> * * *
> In one embodiment, **the caller dials one of the assigned incoming telephone numbers** from one of the caller's telephone numbers associated with the caller.

('156 Patent, Col. 4:21-23, 7:31-33.)

10

**United States District Court**

For the Northern District of California

Accordingly, as used in Claim 1 of the '156 Patent, the Court construes the phrase, "wherein said caller has a plurality of assigned incoming telephone numbers to choose from" to mean:

> **a condition that is met if a caller is registered as a user of the method, has been assigned more than one telephone numbers and is free to choose one of those assigned telephone numbers to make a call.**

**4.    "identifying a recipient associated with the assigned incoming telephone number and the identity"**

The "identifying" step of Claim 1 recites: "identifying a recipient associated with the assigned incoming telephone number and the identity." There are a number of phrases in the "identifying" step and an associated second "wherein" clause over which the parties are in dispute.

**a.    "recipient"**

The "identifying" step operates on a "recipient." The parties dispute the meaning of the word "recipient."

The "identifying" step recites that the "recipient" is a workpiece associated with the "assigned incoming telephone number." In the "connecting" step, Claim 1 recites "connecting" the caller and the "recipient." The first "wherein" clause recites that one of the assigned incoming telephone numbers is associated with "said recipient." The second "wherein" clause recites that each assigned incoming telephone number is associated with "multiple recipient telephone numbers." The word "recipient" and the phrase "recipient telephone number" are used interchangeably.

The written description uses the word "recipient" and the phrase "recipient telephone number" interchangeably in some instances, and as distinct elements in other instances:

> The methods and apparatuses for placing a telephone call are shown in the context of exemplary embodiments of applications in which a caller dials an assigned incoming telephone number to reach a **recipient** that is associated with this assigned incoming telephone number.
> * * *
> In one embodiment, the telephone number dialed by the caller is an assigned incoming telephone number that **corresponds with a recipient.** In one embodiment, the particular **recipient** associated with the assigned incoming telephone number is predetermined by the caller. By uniquely identifying the assigned incoming telephone number dialed by the caller, the system 300 is able to determine, in part, which **recipient** should receive the telephone call initiated by the caller.
> * * *

11

United States District Court

For the Northern District of California

For example, the caller programs the system 300 to connect with a **particular recipient** when the caller dials one of the assigned incoming telephone numbers.

In one embodiment, the call connection module 360 dials the particular **recipient's telephone number** and **connects the caller with the particular recipient**. . . .   The assigned incoming telephone number is configured **to reach the recipient at the recipient's telephone number** when the particular caller dials the assigned incoming telephone number.
* * *

In one embodiment, the same assigned incoming telephone number is associated with **multiple recipients.**  However, **the recipients** associated with this same assigned incoming telephone number are unique based on the identity of the caller.
* * *

In one embodiment, the **recipient field 430** also identifies the **recipient's true telephone number** that allows the system 300 to connect the caller with the **recipient.**  The **recipient's true telephone number is dialed to reach the recipient.**  However, while utilizing the methods and apparatuses for placing a telephone call, the caller dials the particular incoming telephone number to be connected to the **recipient.**
* * *

In one embodiment, this record 400 makes it possible for a user to dial an assigned incoming call (call identifier) from an originating device with a corresponding originating device number (origination device identifier) stored in caller field 420 and **get connected to a recipient communication device with a corresponding communication device number (recipient device identifier) stored in recipient field 430**, without requiring the user to enter any access code or secondary telephone number.

('156 Patent, Col. 2:47-51, 3:45-53, 4:21-32, 4:45-49, 5:42-48, 5:59-67.)

A person of ordinary skill would understand that the word "recipient" means a telephonic device to which the caller desires to be connected.

      **b.**    **"associated with . . ."**

The "identifying" step recites identifying a recipient "associated with" the assigned incoming telephone number and the identity.  The parties dispute the meaning of the phrase "associated with."

As discussed above, in the "receiving" step, a telephone call is received from a caller dialing an assigned telephone number.  In the "detecting" step, the identity of the caller that has dialed the assigned telephone number is detected.  The first "wherein" clause recites that the assigned telephone number "[is] associated" with "said recipient."  The written description discusses "associated with" as follows:

The methods and apparatuses for placing a telephone call are shown in the context of exemplary embodiments of applications in which a caller dials an assigned incoming telephone number to reach **a recipient that is associated with this assigned incoming telephone number.**
* * *

12

United States District Court

For the Northern District of California

In one embodiment, the particular recipient **associated with** the assigned incoming telephone number is **predetermined by the caller.**

* * *

In this example, the assigned incoming telephone number dialed by the caller is **associated with** the recipient within the system 300.

In one embodiment, the same assigned incoming telephone number is **associated with multiple recipients.** However, the recipients associated with this same assigned incoming telephone number are unique based on the identity of the caller.

* * *

In one embodiment, the recipient field 430 identifies a particular assigned incoming telephone number that is **associated with** a particular recipient. **Further, each recipient is associated with a unique assigned incoming telephone number.** For example, if a particular recipient is **associated with** a particular assigned incoming telephone number, the particular recipient is connected to the caller when the caller dials the particular assigned incoming telephone number from a telephone number that is specified in the number of the caller field 430.

* * *

In another embodiment, the recipient is determined, in part, by **the recipient selected by the caller to be associated with the specific assigned incoming telephone number** as shown in the recipient field 430 within the caller's profile. For example, the recipient of the telephone call initiated by the caller depends on the assigned incoming telephone number dialed by the caller and **the recipient that the caller selected for the particular assigned incoming telephone number.**

* * *

In use, a caller customizes the caller's profile by **selecting particular recipients to be associated with corresponding assigned incoming telephone numbers** in one embodiment. In this embodiment, the caller also customizes the caller's profile by selecting telephone numbers to be **associated with** the caller.

('156 Patent, Col. 2:47-51, 3:48-50, 4:26-28, 4:45-49, 5:32-41, 7:1-9, 7:25-29.)

In the embodiments that are discussed in the written description, the phrase "associated with" means that a co-relationship exists between the incoming telephone number that is being dialed by a user, on the one hand, and a recipient, on the other. This association must be in existence before the "identifying" step can operate. Indeed, the association must be in existence before the telephone call is received. Nothing in the specification, including the Claims, recite a process for the operation of the method if such an association does not exist prior to the caller dialing the assigned incoming telephone number.

Claim 1 does not recite any limitation on how the "association" between the number and the recipient is performed. During the prosecution, the inventors discussed an "association" based on designation by the caller at the time the call is being made or one based on a combination of pre-designation by the caller and the identity of the caller:

13

United States District Court

For the Northern District of California

> The particular recipient associated with the **assigned incoming telephone number** is **generally predetermined by the caller.** For instance, the caller programs the system to connect to a particular recipient when the caller dials one of the **assigned incoming telephone numbers,** thereby creating a **predetermined correlation.** . . . In another embodiment, multiple recipients are associated with the same **assigned incoming telephone number,** but distinguished by the particular identity of the caller. In other words, the caller's identity at that called number correlates to a specific recipient, **an association previously made by the caller.**

('156 Patent Prosecution History, Amendment, August 30, 2007.)

The prosecution history confirms that a caller "generally" predetermines the association between an assigned incoming telephone number and a recipient, but does not exclude other possible ways of forming such an association. A person or ordinary skill in the art would understand the phrase "associated with the assigned incoming telephone number and the identity" to mean, a particular telephonic device that is identified as a device to be called based on the data that is received in the operation of previous steps.

Accordingly, as used in Claim 1 of the '156 Patent, the Court construes the phrase, "identifying a recipient associated with the assigned incoming telephone number and the identity" to mean:

> **determining a particular telephonic device that is to be called based on the data received in the operation of the receiving step or the data detected in the operation of the detecting step or both.**

### 5.   "without input of further data by said caller"

The second "wherein" clause recites "wherein each assigned incoming telephone number is associated with multiple recipient telephone numbers, a particular telephone number of a recipient being determined solely by a particular assigned incoming telephone number used by a particular identified caller and without input of further data by said caller."[6] The parties dispute the meaning of the phrase "without input of further data by said caller."

Preliminary to construing the disputed language, the Court considers whether the second "wherein" clause relates to a particular step in the method. This "wherein" clause recites conditions

---

[6] The second "wherein" clause concludes with a "whereby" clause that is considered later in this Order.

affecting determination of the recipient.  As discussed above, the "identifying" step operates on the recipient.  A person of ordinary skill would understand this "wherein" clause to recite that a single "assigned incoming telephone number" is used to associate multiple callers with multiple recipients.  The "identifying" step operates to identify the pertinent recipient based solely on the telephone call having been made by a particular pre-identified caller.  After reciting these conditions, this second "wherein" clause adds, "without further input data by said caller."  This latter phrase would be understood to mean that after the telephone call is received, the identification process operates without requiring the caller to input any other data.

The written description discusses embodiments in which the caller is required to input additional data, such as a password or personal identification number in order to have a recipient identified and connected.  Another embodiment is discussed in which identification of and connection to a recipient are based solely on receiving a call that is being made using an assigned telephone number and detecting the identity of the caller:

> In one embodiment, this record 400 makes it possible for a user to dial an assigned incoming call (call identifier) from an originating device with a corresponding originating device number (origination device identifier) stored in caller field 420 and get connected to a recipient communication device with a corresponding communication device number (recipient device identifier) stored in recipient field 430, **without requiring the user to enter any access code or secondary telephone number.**
> * * *
> In one embodiment, the correct caller profile that corresponds with the caller is found by matching the caller's telephone number as detected in the Block 620 with the number of the caller field 420.  In another embodiment, **the caller enters a password or personal identification number that identifies the caller.**
> * * *
> In one embodiment, the caller dials one of the assigned incoming telephone numbers from one of the caller's telephone numbers associated with the caller.  Based on the dialed assigned incoming telephone number and the telephone call initiated from one of the caller's telephone numbers, **the caller is connected with the recipient without further action from the caller.**

('156 Patent, Col. 5:59-67, 6:60-65, 7:31-37.)

A person of ordinary skill in the art would understand that the subject phrase limits Claim 1 to a method that operates based solely on the assigned incoming telephone call being received from a pre-designated device.

Accordingly, as used in Claim 1 of the '156 Patent, the Court construes the phrase, "without input of further data by said caller" to mean:

> **with respect to identifying the recipient's telephone number, the caller need not enter any data after the call has been received and the identify of the caller has been detected.**

### 6. "whereby said caller is not required to be within a particular network for making calls"

The parties dispute the meaning of the "whereby" clause. Preliminarily, the Court considers whether the "whereby" clause imposes limitations on Claim 1.

A "whereby" clause in a method claim is not given weight when it simply expresses the intended result of a process step positively recited. <u>Minton v. Nat'l Ass'n of Securities Dealers, Inc.</u>, 336 F.3d 1373, 1381 (Fed. Cir. 2003). However, when a "whereby" clause states a condition that is material to patentability, it imposes limitations on the claim and should be construed. <u>Hoffer v. Microsoft Corp.</u>, 405 F.3d 1326, 1129 (Fed Cir. 2005.)

Here, the "whereby" clause of Claim 1 is not a simple recital of the intended result of the process. In the "whereby" clause, the inventors recite that the caller is "not required to be in a particular network for making calls." This phrase is not recited anywhere else in the body of Claim 1. Thus, a construction of its meaning affects the scope of Claim 1. Hence, the Court finds that the "whereby" clause is limiting, and proceeds to construe it.

The "whereby" clause uses the phrase "said caller." This refers to the antecedent "caller" in the "detecting" step. Above, the Court construed "caller" to mean the originator of a telephone call. The "whereby" clause recites that the caller is not required to be within a "particular network for making calls." As previously noted, neither the word "network" nor the phrase "particular network" appears elsewhere in Claim 1. The written description discusses the word "network" as follows:

> [A] calling card caller is typically able to utilize any telephone within a general geographic area to complete the telephone call without incurring any toll charges to the originating telephone.
> * * *
> FIG. 1 is a diagram illustrating an environment within which the methods and apparatuses for placing a telephone call are implemented. The environment includes . . . **a network 120 (e.g., a local area network, a home network, the Internet, telephone network)** . . . .

16

1

> In one embodiment, the caller utilizes interface 115 to access and control content and applications stored in electronic device 110, server 130, or a remote storage device (not shown) coupled via **network 120.**
>
> * * *
>
> [T]he **network 120** is configured to transmit electronic messages for use with the customized application and is configured to transmit voice signals between multiple devices 110.

('156 Patent, Col. 1:29-32, 2:20-26, 2:36-39, 3:19-22.)

A person of ordinary skill in the art would understand from the listed examples that the word "network" means a system of interconnected devices.  "Network for making calls" would be understood to mean a network of interconnected telephonic devices.  One would understand that in a "network for making calls," the telephonic device "for making calls" must be in a telephone network with the recipient telephonic device at the time the call is made or the recipient device must be so configured that it is capable of being brought into the telephone network with the caller in order for the call to be connected.  Thus, although the "whereby" clause recites that the caller is not required to be within a "particular" network, the method requires that the caller be in a telephone network. (See '156 Patent, Col. 1:29-32, 2:20-26, 2:36-39, 3:19-22.)[7]

In construing the "not required to be in a particular network" phrase, the Court is confronted with an insoluble ambiguity: If, in order to make a telephone call, the caller must be in a particular network, namely a telephone network that enables the caller to make a call, how can the Court construe the phrase "not required to be in a particular network" in a way that excludes that "telephone network" from being a "particular network for making calls?"

The purpose of the definiteness requirement is to "ensure that the claims delineate the scope of the invention using language that adequately notifies the public of the patentee's right to exclude." Datamize, LLC v. Plumtree Software, Inc., 417 F.3d 1342, 1347. (Fed. Cir. 2005).  Claims are considered indefinite when they are "not amenable to construction or are insolubly ambiguous.

---

[7] As discussed above, in this method claim, the caller must be a subscriber and must invoke operation of the method by causing a telephone call to be received by dialing an "assigned telephone number."  Thus, the claim requires that the caller must use a device that is in a network with a device that performs the "receiving" step.  The device that performs the "receiving" step must be in a network with the "recipient."  Finally, the caller and the recipient must be in a network in order for the "connecting" step to operate.

United States District Court

For the Northern District of California

Thus, the definiteness of claim terms depends on whether those terms can be given any reasonable meaning."  Id.

The Court finds that the ambiguity with respect to whether the caller must be or need not be in a particular network renders Claim 1 arguably indefinite.  The Court invites the parties to address the cited apparent indefiniteness of Claim 1 in appropriate motions.

**7.    "connecting the caller and the recipient"**

The parties do not request construction of the "connecting" step.  The Court reserves decision on whether to give a construction to the language of the "connecting" step pending further proceedings in the case.

**B.    Claim 15 of the '156 Patent**

Claim 15 of the '156 Patent provides:

A system, comprising:

an originating telephone number module for identifying an originating telephone number of a caller;

a telephone number detection module for detecting an assigned telephone number dialed by the caller; and

a call connection module for connecting the caller with a recipient based on the assigned telephone number and the originating telephone number,

wherein said caller has a plurality of assigned incoming telephone numbers to choose from, at least one of said plurality of assigned incoming telephone numbers being associated with said recipient,

wherein each assigned incoming telephone number is associated with multiple recipient telephone numbers, a particular telephone number of a recipient being determined solely by a particular assigned incoming telephone number used by a particular identified caller and without input of further data by said caller, whereby said caller is not required to be within a particular network for making calls.

**1.    "an originating telephone number module for identifying an originating telephone number of a caller"**

The parties dispute the meaning of the phrase "an originating telephone number module for identifying an originating telephone number of a caller."

As a preliminary matter, the Court considers whether this phrase is written in means-plus-function format pursuant to 35 U.S.C. 112 ¶ 6.

United States District Court

For the Northern District of California

Title 35 U.S.C. § 112 ¶ 6 provides:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

The statutory language makes §112 ¶ 6 applicable to a claim if an "element in [the] claim for a combination" is expressed as a "means for" performing a specified function without the recital of structure.

A claim limitation that actually uses the word "means" invokes a rebuttable presumption that § 112 ¶ 6 applies. By contrast, a claim term that does not use "means" triggers a rebuttable presumption that § 112 ¶ 6 does not apply. Lighting World, Inc. v. Birchwood Lighting, Inc., 382 F.3d 1354, 1358 (Fed. Cir. 2004). "The presumption that a limitation lacking the term 'means' is not subject to section 112 ¶ 6 can be overcome if it is demonstrated that the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function." Id. (quotations omitted). "[T]he presumption flowing from the absence of the term 'means' is a strong one that is not readily overcome." Id. Determining whether a limitation should be regarded as a means-plus-function limitation is a question of law. Id.

The Federal Circuit has not required much "structure" in order to find that a limitation that does not use "means for" is not a means-plus-function limitation.

> In considering whether a claim term recites sufficient structure to avoid application of section 112 ¶ 6, we have not required the claim term to denote a specific structure. Instead, we have held that it is sufficient if the claim term is used in common parlance or by persons of skill in the pertinent art to designate structure, even if the term covers a broad class of structures and even if the term identifies the structures by their function.

Lighting World, at 1359-60. In addition to examining how the disputed term is used throughout the patent, a court should consult dictionaries, including technical dictionaries, to determine whether a term "has achieved recognition as a noun denoting structure, even if the noun is derived from the function performed." Id. at 1360-61.

Here, the Court focuses its analysis on the word "module," and whether that word is so lacking in structure that it should be construed under section 112 ¶ 6. Courts that have construed

19

United States District Court

For the Northern District of California

"module" have come down on both sides of this issue. Compare Roy-G-Biv Corp. v. Fanuc Ltd., No. 2:07-CV-418 (DF), 2009 WL 2971097, at *26-28 (E.D. Tex. Aug. 25, 2009) (finding not means-plus-function); Palmtop Productions, Inc. v. Lo-Q PLC, 450 F. Supp. 2d 1344, 1364-65 (N.D. Ga. Aug. 28, 2006) (finding not means-plus-function), with Ranpak Corp. v. Storopack, Inc., No. 98-1009, 1998 WL 513598, at *2 (Fed. Cir. July 15, 1998) (finding means-plus-function); Kozam v. Phase Forward Inc., No. MJG-04-1787, 2005 WL 6218037, at *6-7 (D. Md. Aug. 29, 2005) (finding means-plus-function).

In Palmtop Productions, the court found that "communications module" had sufficient structure to avoid construction under section 112 ¶ 6 because it found that "module" was more than a mere verbal construct serving as a substitute for "means for," the dictionary defined "module" in terms of an assembly of electrical components, and, when combined with "communications," the term would have conveyed sufficient structural meaning to a skilled artisan. 450 F. Supp. 2d at 1365. In Roy-G-Biv Corp., the court found that "a control command generating module for generating control commands based on the component functions of the application program, the component code associated with the component functions, and the driver code associated with the software drivers" had sufficient structure to avoid construction under section 112 ¶ 6. Specifically, the court found that "command generating module" sufficiently denoted a structure in the relevant art, and that the recited function itself contained sufficient structure. 2009 WL 2971097, at *28.

On the other hand, in Ranpak Corp., the Federal Circuit found that two similarly worded claims—one that included "settable control means" and one that included "settable control module"—should be construed under section 112 ¶ 6. 1998 WL 513598, at *2.[8] The Court stated only that the word module in that case "merely set forth [a] black box without recitation of structure for [performing the] specified function." Id. Similarly, in Kozam, the court construed "a first data

_____

[8] The full claim limitation read as follows: "settable control module . . . for selectively programming said motor for actuation thereof for a selected one period of time of a plurality of periods of time, whereby the pad-like product can be automatically produced by said mechanism for said selected one period without any further required action on the part of a machine operator." Id. at *1.

verification module for verifying data entered at the remote, site computer" under section 112 ¶ 6

because the plaintiffs in that case conceded that the word meant nothing more than "a software

component" in the art and the court concluded that there was "no meaningful structure described."

2005 WL 6218037, at *6-7.

Here, the disputed word is used in the written description as follows:

> In one embodiment, the system 300 includes a telephone number detection module 310, **a caller identification detection module 320,** a storage module 330, an interface module 340, a control module 350, a call connection module 360, and an accounting module 370.
> In one embodiment, the control module 350 communicates with the telephone number detection module 310, **the caller identification detection module 320,** the storage module 330, the interface module 340, the call connection module 360, and the accounting module 370. In one embodiment, the control module 350 coordinates tasks, requests, and communications between the telephone number detection module 310, **the caller identification detection module 320,** the storage module 330, the interface module 340, the call connection module 360, and the accounting module 370.
> * * *
> In one embodiment, **the caller identification detection module 320** determines the originating telephone number that the caller is utilizing when making the telephone call. In one embodiment, **the caller's telephone number is detected by the caller identification module 320 through a caller ID service.** In this embodiment, **the caller identification module 320** automatically senses the caller's telephone number through the caller ID service. In another embodiment, the caller's originating telephone number is manually entered by the caller.
> * * *
> In one embodiment, **the interface module 340 receives a signal** from one of the devices 110 indicating the assigned incoming telephone number that is dialed by the caller. In another embodiment, the interface module 340 indicating **the telephone number that is being utilized by the caller** to initiate the telephone call.
> * * *
> The system 300 in FIG. 3 is shown for exemplary purposes and is merely one embodiment of the methods and apparatuses for placing a telephone call. Additional **modules may be added to the system 300** without departing from the scope of the methods and apparatuses for placing a telephone call. Similarly, **modules may be combined or deleted** without departing from the scope of the methods and apparatuses for placing a telephone call.

('156 Patent, Col. 3:29-43, 3:54-63, 4:11-16, 5:3-10.)

The Court finds that the written description uses the word module in a manner that connotes

sufficient structure to a skilled artisan, "even if the word covers a broad class of structures" used for

detecting the originating telephone number of a call. See Lighting World, 382 F.3d at 1358. Such a

well-known function as detecting the telephone number of a caller would be readily understood by a

skilled artisan in the context of the invention with minimal structural disclosure. Furthermore,

21

common definitions of "module" connote structure, including "a collection of circuitry that is designed to perform a specific operation," "a packaged functional hardware unit designed for use with other components," and "a logically separable part of a [software] program." See INSTITUTE OF ELECTRICAL AND ELECTRONICS ENGINEERING (IEEE) DICTIONARY OF STANDARDS TERMS 703-04 (7th ed. 2000).[9]  Thus, '156 Patent discloses sufficient structure to avoid construing "an originating telephone number module for identifying an originating telephone number of a caller" under section 112 ¶ 6.  Having found that the disputed phrase is not drafted in means-plus-function format, the Court construes the phrase in light of the above analysis of the written description and ordinary meaning of the word "module."

Accordingly, as used in Claim 15 of the '156 Patent, the Court construes the phrase, "an originating telephone number module for identifying an originating telephone number of a caller" to mean:

**a discrete component of hardware or software or both, that performs the function of identifying an originating telephone number of a caller.**

**2.     "a telephone number detection module for detecting an assigned telephone number dialed by the caller"**

The parties dispute the meaning of the phrase "a telephone number detection module for detecting an assigned telephone number dialed by the caller."

For substantially the reasons stated in Section IV.B.1, the Court finds that this claim limitation is not written in means-plus-function format.  In addition to the portions of the written description discussed in Section IV.B.1, the following language in the written description pertains to this disputed phrase:

---

[9]  Additionally, Claim 14 describes similar functionality, but differs from Claim 15 in that it is written in means-plus-function format.  Under the doctrine of claim differentiation, there is a "presumption that each claim in a patent has a different scope."  Curtiss-Wright Flow Control Corp. v. Velan, Inc., 438 F.3d 1374, 1380 (Fed. Cir. 2006).  While this doctrine is "a guide, not a rigid rule," the Court finds that it weighs in favor of not construing Claim 15 under section 112 ¶ 6.  Id. at 1381.

**United States District Court**
For the Northern District of California

1  In one embodiment, **the telephone number detection module 310** detects the
2  telephone number dialed by the caller.  In one embodiment, the telephone number dialed by the caller is an assigned incoming telephone number that corresponds with a recipient.

3  ('156 Patent, Col. 3:39-48.)

4  Accordingly, for substantially the same reasons as discussed in Section IV.B.1, as used in

5  Claim 15 of the '156 Patent, the Court construes the phrase, "a telephone number detection module

6  for detecting an assigned telephone number dialed by the caller" to mean:

7  **a discrete component of hardware or software or both that performs the function of detecting an assigned telephone number dialed by the caller.**

8  **3.  "a call connection module for connecting the caller with a recipient based on the
9  assigned telephone number and the originating telephone number"**

10  The parties dispute the meaning of the phrase "a call connection module for connecting the

11  caller with a recipient based on the assigned telephone number and the originating telephone

12  number."

13  For substantially the reasons stated in Section IV.B.1, the Court finds that this claim

14  limitation is not written in means-plus-function format.  In addition to the portions of the written

15  description discussed in Section IV.B.1, the following language in the written description pertains to

16  this disputed phrase:

17  In one embodiment, **the call connection module 360 connects the caller with a
18  recipient.**  In one embodiment, **the call connection module 360** selects a particular recipient based on the profile information associated with the caller.
   * * *
19  In one embodiment, **the call connection module 360** dials the particular recipient's telephone number and connects the caller with the particular recipient.  In this example, the
20  assigned incoming telephone number dialed by the caller is associated with the recipient within the system 300.  The assigned incoming telephone number is configured to reach the
21  recipient at the recipient's telephone number when the particular caller dials the assigned incoming telephone number.
22  In one embodiment, **the call connection module 360** connects the caller with a particular recipient based on the identity of the caller, the caller's profile, and the assigned
23  incoming telephone number dialed by the caller.

24  ('156 Patent, Col. 4:17-20, 4:24-37.)

25  Accordingly, for substantially the same reasons as discussed in Section IV.B.1, as used in

26  Claim 15 of the '156 Patent, the Court construes the phrase, "a call connection module for

27

28                                                   23

connecting the caller with a recipient based on the assigned telephone number and the originating telephone number" to mean:

> **a discrete component of hardware or software or both that performs the function of connecting the caller with a recipient based on the assigned telephone number and the originating telephone number.**

### V.  CONCLUSION

In this Order, the Court has given its construction of submitted words and phrases of the '156 Patent.

The parties shall appear for a Case Management Conference on **May 24, 2010 at 10 a.m.** On or before **May 14, 2010**, the parties shall submit a Joint Case Management Statement.  The Statement shall include, among other things, a good faith discovery plan with a proposed date for the close of all discovery and a stipulation as to a mediation process.

Dated:  May 3, 2010

_____
JAMES WARE
United States District Judge

1   **THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

2   David S. Bloch dbloch@winston.com
    James Chung-Yul Yoon jyoon@wsgr.com
3   Jason Charkow jcharkow@winston.com
    Matthew A. Argenti margenti@wsgr.com
4   Scott R. Samay ssamay@winston.com
    Seungtaik Michael Song msong@wsgr.com
5   Signe B. Purup spurup@winston.com

6

7   **Dated:  May 3, 2010**                    **Richard W. Wieking, Clerk**

8

9                                              **By:____/s/ JW Chambers_____**
                                               **Elizabeth Garcia**
                                               **Courtroom Deputy**
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California